CoLE, ADMINISTRATOR *v.* FURRY.

4-5734

136 S. W. 2d 467

Opinion delivered February 5, 1940.

*C. R. Starbird,* for appellant.

*Edgar L. Matlock* and *R. S. Wilson,* for appellee.

GRIFFIN SMITH, C. J.   This cause was tried upon the theory that a contract of September 14, 1935, signed by W. G. Furry, Ell Edwards, and J. H. Cole, created a partnership[1].

---

[1] The contract, signed by W. G. Furry, Ell Edwards, and J. H. Cole, dated September 14, 1935, follows: "Whereas, W. G. Furry and Ell Edwards . . . are joint owners of one-half of the owner's royalty in [the northeast quarter of the northwest quarter of section 33, township fifteen, range fourteen east, Okmulgee county, Oklahoma], . . . and the said Furry and Edwards are also the lease owners in and to [the northwest quarter of the northeast quuarter of section 33, township fifteen, range fourteen east, and the south half of the northeast quarter of section 33, township fifteen, range fourteen east, Okmulgee county, Oklahoma], which lease will expire by January 1, 1936, unless lessee shall commence drilling of a well on said premises before January 1, 1936, and prosecute said drilling with due diligence to the Red Fork sand, found at about 1,500 feet, unless oil or gas is

Edwards and Furry were owners of one-half of the owner's royalty in certain lands upon which oil was being produced at the time the agreement was consummated. The Edwards-Furry interests in such lease was pledged to Cole to the extent of $750 in connection with an advance of $2,000 he was to make for use in developing oil and gas on other leases. For the purpose of this opinion the interests of Edwards and Furry in the owner's royalty from which $750 was conditionally to have been repaid will be referred to as Tract No. 1, and the lands upon which there were operations under the contract of September 14 will be referred to as Tract No. 2.

Under the agreement whereby Cole advanced $2,000, Edwards and Furry contributed $500. The Edwards-Furry note of September 14, 1935, for $750 was due ". . . one year or before after date," with interest at 10 per cent., and was the joint and several obligation of the makers.

From time to time during 1935 and 1936 Cole made other advances—a total of $11,100. In most instances when a check was written, a note for half the amount remitted was executed by Edwards and Furry. These

---

found in paying quantities at a lesser depth; . . . Now therefore, . . . we, W. G. Furry and Ell Edwards, as owners above stated and set forth, for and in consideration of the sum of $2,000 to be paid by J. H. Cole, of Alma, Arkansas, do hereby grant, bargain and sell unto the said J. H. Cole one-half interest in and to the aforedescribed leases on the lands last described. . . . The said Furry and Edwards put in the sum of $500 cash and the said J. H. Cole pays into the said Edwards and Furry the sum of $2,000, which sum is to be used by the said Ell Edwards as supervisor in commencing as soon as possible a well for gas or oil upon the premises aforedescribed in said leases, and said drilling shall be prosecuted with all due diligence: It is further agreed by and between the parties hereto that if the first well drilled upon said leased lands shall be a non-producing well, that the said Furry and Edwards shall assign their royalty payments over to the said J. H. Cole, said lands being the northeast quarter of the northwest quarter of section 33 [etc.] until said royalties due Furry and Edwards shall have repaid to the said J. H. Cole the sum of $750; whereupon the said royalty payments shall revert to the said Furry and Edwards, it being the intention of Furry and Edwards to secure to the said J. H. Cole the loan of $750 included in the said $2,000 cash put into the leases by said J. H. Cole for development of said leases. It is further understood and agreed in consideration of the premises that in case a producing well is brought in on said leased lands, the said J. H. Cole is to finance the necessary expenses of connecting said well to the pipe line, and it is understood and agreed that the said J. H. Cole shall receive all financial returns from the production of oil and gas on said lands until he shall have been repaid all moneys invested in said leased lands, save and except the sum of $1,250. After said moneys put in for financing the leased lands and necessary production have been repaid to said J. H. Cole, then and thereupon the said J. H. Cole shall receive one-half of the returns of production and W. G. Furry and Ell Edwards shall receive one-half of the said financial returns from said leased lands by oil or gas production thereon."

notes contained the expressions:—"As per contract after date, for value received, I, we, or either of us promise to pay"; or, "after date, for value received, I, we, or either of us promise to pay." The phrase ". . . as per contract executed September 14, 1935," appears in some position in each note. Except as to the first note there was no fixed due date.

J. H. Cole died in September, 1937. W. H. Cole (a son) found among his father's papers Edwards-Furry notes aggregating $5,300, inclusive of the $750 item. As administrator, W. H. Cole sued on the notes. Service was had on Furry, but Edwards was beyond the court's processes and did not enter his appearance.

Defense was that the references "as per contract" found on the notes constituted in each instance a reservation as to payment; that the entire fund advanced by appellant's father was for partnership purposes; that the notes were executed as memoranda only, to indicate the amount Cole would be entitled to receive from oil or gas production; that the venture did not prove profitable, although oil and gas in small quantities were found; that the partnership had not been liquidated, and without a sale of assets it was impossible to determine the true status of affairs; that all books, records and accounts were in possession of Edwards, and he was in Oklahoma.

The suit, brought in circuit court, was by agreement transferred to chancery, where the complaint was dismissed for want of equity. As expressed by the chancellor, ". . . the partnership has not been settled, with findings of indebtedness of one partner in favor of another, and the notes are qualified by the terms of the contract, to which each refers."

The contract shows that $2,500 was requiried for the initial undertaking. Of this amount $2,000 was supplied by Cole and $500 by Edwards and Furry. But, as to Cole's participation, $1,250 appears to have been an investment, while $750 is conceded to have been a loan secured by values in Tract No. 1. By this arrangement Edwards and Furry were responsible for $1,250.

Cole invested an equal sum. It is not at all certain the contract created a partnership. However, it is not necessary to pass upon this question, and it is pretermitted. What seems conclusive is that Cole (with the exception of $500 initially paid in by Edwards and Furry) supplied all of the money spent in developing the property.

After completion of the well mentioned in the contract two others were drilled. Furry testified that the first well yielded "considerable profit" from the sale of oil and gas.

By deposition Edwards testified there had been no court action "to wind up the partnership"; that oil and gas development continues; that he has charge of all books, papers, records and physical properties; that no profits were earned, but on the contrary there had always been an indebtedness; that the money provided by Cole was used in developing, equipping, and operating the leases, and that all income from development had been used in the same way.

By payment of $1,250 and through loan of $750, Cole acquired a one-half interest in the leases embraced within Tracts No. 2. Apparently it was not in contemplation that more than one well was to be drilled through use of original capital. An additional obligation assumed by Cole in the event a producing well should be brought in required that he ". . . finance the necessary expense of connecting said well with the pipeline."

Edwards and Furry both testified that there was no oral agreement subsequent to the writing of September 14. We must, therefore, construe the contract of the parties in the light of what the signed agreement undertook to accomplish.

It seems to have been contemplated that the *investment* of Edwards and Furry should equal that made by Cole, even though the latter, in order to equalize available cash, had to lend his associates $750. This being the apparent purpose, it follows that subsequent advances were shaped by the same pattern—one-half being Cole's

investment, and one-half being the investment of Edwards and Furry. That Cole chose to lend Edwards and Furry an amount equal to his own investment is not a mere supposition to be discounted because the notes bore references to the contract of September 14. That contract fixed the ratio of investment to loan, and it is authority for appellant's contention that the note was intended to be paid. If this is true (and assuming, without deciding, that there was a partnership) the amounts advanced to Edwards and Furry individually would not be matters within the partnership relation.

We think the contract and the manner of repayment had reference to the *investment* made by Cole, and not to money he loaned. Of the first $2,000 advanced there was no intent that Cole should be repaid $1,250—his *investment*—other than to the extent of his one-half participation in production, etc.

In reversing the judgment we do not act with a settled conviction that appellee's construction of the contract. is wholly untenable. Yet, in view of the fact that the contract was drafted and transcribed by Furry, its ambiguous provisions must be construed most strongly against him.

The judgment is reversed, and judgment given here on the notes, with interest in accordance with their terms.